WILLIAM OLSON, Respondent, v. A. M. BAKER and C. J. Lee, Appellants.

(178 N. W. 126.)

**Banks and banking — evidence held not to sustain a verdict for balance of price of bank stock.**

In this case the plaintiff recovered a verdict and judgment against the defendants for $1,367.66, and interest, as the balance due on fifty shares of bank stock which Olson sold to defendant Lee. *Held,* that there is no evidence to sustain the verdict.

Opinion filed May 20, 1920.

Appeal from the District Court of Cass County, Honorable A. T. Cole, Judge.

Reversed and dismissed.

*Engerud, Divet, Holt, & Frame,* for appellants.

"The market value of an article may be received to show the prob-

able price agreed upon." Zelch v. Hirt (Wis.) 61 N. W. 20; Saunders v. Gallagher, 55 N. W. 600; Bangart v. Hyde (Mich.) 53 N. W. 915; Grabowsky v. Baumgart (Mich.) 87 N. W. 891; Weidness v. Phillips, 114 N. Y. 458; Rubino v. Scott, 118 N. Y. 662.

The judgment must be in accord with the pleadings. Satterland v. Beal, 12 N. D. 122; Lowe v. Jehson, 22 N. D. 148; Yancey v. Boyce, 28 N. D. 187; Comtograph v. Bank, 32 N. D. 59; Reed v. Gould, 53 N. W. 357; Marshman v. Conklin, 21 N. J. Eq. 546; Buchman v. Sepulveda, 39 Cal. 688.

*Winterer, Combs, & Ritchie,* for respondent.

"Where the making of an alleged contract to sale is in dispute, the value of the thing alleged to have been sold cannot be proved to show the making of the contract." 9 Cyc. 767, 768; Gidney v. Turner, 52 Ark. 117, 12 So. 201; Pettibone v. Lake View Town Co. 134 Cal. 227, 66 Pac. 218; Byrne v. Byrne, 47 Ill. 507; Craig v. French, 181 Mass. 282; Campau v. Moran, 31 Mich. 280; Carpenter v. Taylor, 164 N. Y. 171; Doyle v. Edwards, 15 S. D. 648, 91 N. W. 322.

"It is only in cases where there is nothing to show in writing an agreement to pay a stipulated price for the property that such evidence is admissible." Carlinville v. Laager, 129 Ill. App. 647; Scott v. Realty Co. 225 Mo. 76, 164 S. W. 532.

Where the plaintiff brings his action in assumpsit, pleading a purchase and sale of the property converted, as was done in the case at bar, it is conclusive evidence that the plaintiff has elected to waive the tort and recover in assumpsit. Braithwaite v. Aaken, 3 N. D. 365, 56 N. W. 133; Boyle v. Poor, 163 Pac. 967; Trust Co. v. Pool, 136 Ill. App. 266.

Robinson, J. The complaint is that on January 8, 1918, the plaintiff owned fifty shares of bank stock, which he undertook to sell, and did sell, to the defendants at $125 a share, with interest, and that by mistake they paid for the same only $100 a share and interest, amounting to $5,468.61. The question is on the sufficiency of the evidence to sustain a verdict against either defendant. There is no claim that plaintiff made, or attempted to make, any sale, except through the defendant Baker. There is no claim that Baker purchased or agreed to purchase any stock. The claim is that Baker converted the stock by

delivering it to Lee at $100 a share, and that by waiving the tort the plaintiff has a right to recover from Baker the contract price. Now the rule is that in an action to recover for the conversion of property the owner may waive the tort. He may allege and prove the reasonable value of the property and a promise to pay the same. The law will imply the promise, because it accords with the exact measure of damages; but in such an action the law never implies a promise to pay an agreed price, which may be more or less than the reasonable value. There is not a scintilla of evidence to sustain the verdict against Baker, as he never offered to purchase the stock. In the deal between the plaintiff and defendant Lee, Baker was a mere friendly go-between. Olson owned fifty shares of the bank stock and wanted to sell it. He requested Baker to find him a purchaser at $125 a share, with interest from the date of his purchase. In a friendly way, without any commission or any hope of reward, Baker undertook to find a purchaser. He consulted with Mr. Lee, the president of the bank, who offered to pay the price demanded if he could have the stock before the meeting of the stockholders on January 10, 1918. Accordingly, on January 8th, Baker wrote as follows:

Fargo, January 8, 1918.

William Olson,
    Valley City.

If you will sell your stock in the Equity Bank *at once* my man is on hand with the cash to take it as per agreement of some time ago, *viz.*, $125 per share, with 7 per cent interest to January 10th.

Yours,<br>A. M. Baker.

That was a clear and definite offer. The words "at once" and the words "with interest to January 10th showed the offer must be accepted on or before January 10th. On January 10th there was to be a stockholders' meeting at Fargo. To avoid friction, which was anticipated and which did occur at the meeting, Lee, who held 200 shares of the stock, wanted to buy out Olson so that he would not be present at the meeting as a trouble maker. Olson did not get the letter, so he was present at the meeting with proxies. He wanted to be a director, and he was the cause of a protracted session and of considerable wrangling.

He was defeated and disgusted. Then, on the evening of January 10th, at the bank building, he saw Baker and said to him that he wanted to get rid of his stock. Then, as Baker testifies, Olson offered to sell the stock at $100 a share and interest, and Lee offered to pay that sum. Then, on the night of January 10th, Olson went to Valley City, received the letter that Baker had written on the 8th, and the next morning he went to his banker in Valley City, made a draft on Baker for the precise amount of the stock at $100 a share and interest. The draft is in words as follows:

Valley City, January 11, 1918.

$5,468.61.

On Demand, pay to the order of the Bank of Valley City, North Dakota five thousand four hundred and sixty-eight & 61/100, dollars. Value Received and charge the same to the account of

William Olson,

To A. M. Baker,
c/o Equity International Bank,
    Fargo, N. D.

That draft with the stock was sent to the First National Bank of Fargo. Baker notified Lee, and he at once gave his check and took up the draft and the stock. Olson claims that he signed the draft without reading it, and that he never agreed to sell the stock for less than $125 a share, and interest. It is quite possible there may have been a mistake, and that the deal might have been rescinded. But this is not an action to rescind. It is an action based on a contract with Lee. Let us examine the evidence:

As Lee testifies, on January 7th, he said to Baker that he would take the stock at $125 a share if he could get it before the meeting; but he did not get it. Then, on the evening after the meeting, Baker told him that Olson offered his stock for sale at par and 7 per cent. (98)

Q. What did you say?

A. I said I would take it at that price. I had noticed Baker and Olson in conversation together.

Q. It was after the conversation that Baker talked with you?

A. Yes, sir.

Q. Did you consider par and 7 per cent a fair value for the stock?

A. I did.

Q. Did you at any time have any conversation with Olson with reference to buying the stock?

A. I never did.

An offer was made to show that at the time of the meeting the book value of the stock was $119 a share. An offer was made to show that, after the meeting Lee purchased from the cashier of the First National Bank of Freemont ten shares of the stock at $100 a share. Defendant Lee testified the bank was organized about a year and four months before the annual meeting in January, 1918, and during that time it had been losing money. Baker testifies that at the annual meeting of the stockholders on January 10, 1918, Olson was a candidate for director. There were other candidates on the same ticket with him. He says: "After the meeting Olson called me aside and wanted to know if I could find a purchaser for his stock. Olson said he had all he wanted. I asked him if he had gotten my letter, and he said, 'No.' And I said what do you want for the stock now? He said he wanted par and 7 per cent. I says I think I can dispose of it for you. Then I saw Mr. Lee and quoted him the stock at par and 7 per cent, and he said he would take it." (77)

It appears the draft, with the stock, was sent to the First National Bank of Fargo. Lee paid the draft and the collection charges, $5.50. The par value of the stock was, $5,000; the interest at 7 per cent for one year, four months, and two days was, $468.61; the draft was for $5,468.61, and it was paid, with collection charges, $5.50. Olson must have told his banker to figure interest on $5,000. The draft is a very short and plain document. Olson is a business man. It is hard to conceive how he could sign the draft without seeing the amount and knowing that it was not equal fifty times $125, or $6,250, with interest. The record shows not a scintilla of evidence to charge Mr. Lee with an express or implied contract to pay for the stock more than the sum actually paid. It does not show that the stock was worth more

than the sum paid. The court should have directed a verdict in favor of the defendant for a dismissal of the action.

Reversed and dismissed.

CHRISTIANSON, Ch. J., and BIRDZELL, J., concur.

BRONSON, J. I concur in the result.

GRACE, J. I dissent.